UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cause No. 1:22-CR-3-HAB |
| | ) | |
| TEVIN L. WOODS | ) | |

**OPINION AND ORDER**

Defendant was pulled over by a Fort Wayne Police Department officer after he failed to signal a turn. A resulting check of the Spillman information system showed an alert that Defendant might be armed. Acting on that alert, the officer asked Defendant to exit the car. The officer saw ammunition in Defendant's car door and a subsequent search of the vehicle found a firearm. Because Defendant is a prohibited person, the firearm and ammunition earned him a charge under 18 U.S.C. § 922(g).

Defendant now moves to suppress all evidence from his vehicle. (ECF No. 23). He claims that the officer unreasonably delayed a routine traffic stop to go on a "fishing expedition" for grounds to search the car. The Court held an evidentiary hearing on the motion in June. That motion is now fully briefed (ECF Nos. 30, 31, 33) and ripe for determination.

**I.    Background Facts**

The subject traffic stop occurred in December 2021. Detective Alvin Davis ("Davis"), driving an unmarked police vehicle, saw Defendant run a stop sign. He also observed that Defendant's vehicle had illegally dark window tint. After following Defendant for a short time, Davis saw Defendant run a stop sign. Davis then activated his lights and sirens and performed the police stop. Because of the way the in-car cameras work, only the stop sign violation was captured on video.

After obtaining Defendant's driver's license, Davis returned to his vehicle to check Defendant's license status and any outstanding warrants. Fort Wayne Police Department officers use the Spillman system to perform these tasks, and Davis testified that he uses Spillman during every traffic stop. Upon entering Defendant's name into Spillman, the system returned these alerts: "party armed, convicted felon, and DNA on file." The "party armed" alert was the most recent. Based on these alerts, Davis delved deeper into Defendant's records.

Davis' review turned up several concerning facts. Defendant previously had a firearm license in Indiana, but it had been revoked. In September 2021, Defendant was the subject of a police report. That report said that Defendant had threatened to shoot a female and waived a purple firearm in a parking lot while making threats. That report also stated that Defendant always carried the gun and that he kept it in his car door compartment. Davis' traffic stop was Defendant's first interaction with law enforcement since that report.

Davis testified that, based on his experience in law enforcement, the Spillman information concerned him. This was even though Defendant had been courteous throughout the interaction; Davis testified that courteous people could switch quickly to violent. Because of his concerns, Davis called for backup and decided to conduct a protective sweep of the vehicle.

Davis returned to Defendant's car and asked Defendant to exit. As Defendant exited the car, Davis spotted a box of ammunition in the door pocket. A protective search of the vehicle revealed a purple 9mm handgun in the center console. Defendant was then arrested, and his vehicle processed and towed under the Fort Wayne Police Department towing policy. The entire stop was captured on Davis' body cam, and footage from the body cam was introduced as evidence at the evidentiary hearing. The elapsed time from the beginning of the stop until Davis noticed the ammunition was less than six minutes.

**II.     Legal Analysis**

The Fourth Amendment guarantees the right to be free from "unreasonable searches and seizures" by the government. This protection "extend[s] to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). Thus, whenever a police officer decides to stop a vehicle, the stop must meet the reasonableness requirements of the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 663 (1979). If a search or seizure violates the Fourth Amendment, courts will exclude evidence gained from that violation in judicial proceedings against the person injured. *Terry v. Ohio*, 392 U.S. 1, 29 (1968) ("[E]vidence may not be introduced if it was discovered by means of a seizure and search which were not reasonably related in scope to the justification for their initiation.").

To pull a car over for a brief investigatory stop, a police officer must have "at least [an] articulable and reasonable suspicion" that the person stopped is breaking the law. *Prouse*, 440 U.S. at 663. Here, the parties agree that, after observing Defendant fail to signal a turn, Davis had at least an articulable and reasonable suspicion that Defendant broke the law. Ind. Code § 9-21-8-24; *United States v. Muriel*, 418 F.3d 720, 724 (7th Cir. 2005) (officer-observed traffic violation triggers probable cause to stop). But a seizure that is "lawful at its inception" can still violate the Fourth Amendment if it is "prolonged beyond the time reasonably required to complete" the initial mission of the stop. *Illinois v. Caballes*, 543 U.S. 405, 407 (2005) (citing *United States v. Jacobsen*, 466 U.S. 109, 124 (1984)). This is what Defendant claims happened here.

The authority to detain a vehicle and its occupants for a police-observed traffic violation, ends when the "tasks tied to the traffic infraction are—or reasonably should have been—completed." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). Without reasonable suspicion, then, law enforcement may not extend a traffic stop with measures unrelated to the mission of the

3

stop. *United States v. Rodriguez-Escalera*, 884 F.3d 661, 668 (7th Cir. 2018). To meet the reasonable-suspicion requirement, an officer must have "a particularized and objective basis" for suspecting the persons detained of breaking the law. *Heien v. North Carolina*, 574 U.S. 54, 60 (2014). Although reasonable suspicion "embodies something less than probable cause," it requires more than a hunch or inchoate suspicion. *United States v. Wilbourn*, 799 F.3d 900, 909 (7th Cir. 2018). Thus, to justify a "particular intrusion [a] police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant th[e] intrusion." *Terry*, 392 U.S. at 21.

When evaluating reasonable suspicion, courts must consider "the totality of the circumstances—the whole picture." *United States v. Cortez*, 449 U.S. 411, 417 (1981). A "divide-and-conquer analysis" that examines each factor supporting reasonable suspicion in isolation is not permitted. *District of Columbia v. Wesby*, 138 S.Ct. 577, 588 (2018). Even so, the totality-of-the-circumstances test does not bar courts from discussing factors separately. *See*, *e.g.*, *Wesby*, 138 S.Ct. at 586–88 (discussing each factor supporting probable cause separately before considering the combined effect of those factors). It simply requires that courts consider the reasonable inferences that a law enforcement officer could draw from the objective facts in combination.

Taking the record as a whole, the Court has no trouble concluding that Davis had a reasonable suspicion that Defendant was in possession of a gun during the traffic stop. Defendant complains about Davis' use of Spillman, but the Court cannot agree. Beyond determining whether to issue a traffic ticket, an officer's mission includes "ordinary inquiries incident to [the traffic] stop." *Caballes*, 543 U.S. at 408. Typically, such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. *Rodriguez*, 575 U.S. at 355. Davis testified that

he used Spillman to, among other things, check a driver's license status, run license plates, and access both NCIC (the National Crime Information Center) and IDACS (the Indiana Data and Communications System). (ECF No. 32 at 7). These are the very kind of uses the Supreme Court identified as part of the "mission" of conducting a traffic stop. Davis was not elongating the stop when he checked Spillman—he was conducting the stop.

As soon as Davis accessed Spillman, he saw an alert suggesting that Defendant was armed. Defendant argues that Davis could not be sure of the accuracy of this information, but that hardly matters. Reasonable suspicion can rest on mistakes of both fact and law. *Heien*, 574 U.S. at 60-61. The issue, then, is not whether the alert was accurate, but whether it was reasonable for Davis to rely on it. The testimony is that Davis uses Spillman in nearly every traffic stop he conducts. The system interfaces with NCIC and IDACS, a national and state repository of information, respectively. Davis testified that, in his five years of service with the Fort Wayne Police Department, he had found "very little" in the way of inaccuracies in the system. Without some evidence from Defendant undermining the notion that Davis could reasonably rely on Spillman, the Court will not second-guess the use of a computer system used by Fort Wayne Police Department officers countless times each day.

And far from a "fishing expedition," Davis' use of Spillman was extremely focused. Davis testified that he reviewed only the most recent police interaction report, which informed him that law enforcement had received a report of Defendant waving a firearm around while making threats. The report also told him that Defendant always carried the firearm and that he kept it in his vehicle. And finally, the report told Davis that he was the first officer to interact with Defendant since that incident. Rather than continue to search Defendant's interactions with law enforcement, Davis conducted the protective search of Defendant's vehicle. This sort of limited, diligent investigation,

prompted by an alert that Defendant was potentially armed, does not violate the Constitution. *United States v. Offord*, 788 Fed. App'x 384, 386 (7th Cir. 2019).

Boiled down to its essence, Defendant's argument posits that an officer violates the Constitution when he conducts a limited check of readily available information prompted by an—accurate in this case—alert of potential criminal activity and uses less time than it takes to microwave bacon to do it. That is not a finding that this Court can make. Davis' investigation was well within the bounds of legality, and the fruits of that investigation can be used against Defendant in this prosecution.

### III. Conclusion

For these reasons, Defendant's Motion to Suppress Physical Evidence (ECF No. 23) is DENIED.

SO ORDERED on October 18, 2022.

    s/ Holly A. Brady
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT